# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| DEXTER ROGERS, Individually and as Personal Representative of the ESTATE OF CARRIE BELL ROGERS and as Personal Representative of the ESTATE OF PREMIUS ROGERS, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CAUSE NO.: 1:16-CV-40-TLS |
| ALLEN SUPERIOR COURT, JUDGE NANCY ESHCOFF BOYER, JUDGE STANLEY A. LEVINE, JUDGE WENDY DAVIS, PARKVIEW HOSPITAL INC., MICHAEL J. PACKNETT, CEO OF PARKVIEW HEALTH, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss [ECF No. 16], filed by Defendants Parkview Hospital, Inc., and Michael J. Packnett, CEO of Parkview Health (Parkview Defendants). The pro se Plaintiff, Dexter Rogers, Individually and as Personal Representative of the Estate Carrie Bell Rogers, and as Personal Representative of the Estate of Premius Rogers, filed his Complaint on January 28, 2016, against the Parkview Defendants as well as against various state court judges and the Allen Superior Court, which is where he is a pursuing a medical malpractice claim. The Plaintiff's Complaint invokes Title VI of the Civil Rights Act of 1962, 42 U.S.C. § 2000d *et seq.* as the grounds for relief. The statute provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

For the reasons stated in this Opinion and Order, the Court finds that the Plaintiff's claims against the Parkview Defendants are barred because they were not filed within the applicable statute of limitations, and there is no basis to toll the limitations period.

**STANDARD OF REVIEW**

"To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although pro se complaints are to be liberally construed and held to a less stringent standard than pleadings drafted by lawyers, *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013), the factual allegations in the complaint must be enough to raise a right to relief above a speculative level, *Twombly*, 550 U.S. at 555. A plaintiff can also plead himself out of court if his allegations clearly establish all the elements of an affirmative defense, including the defense that the action was filed after the statute of limitations period expired. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing exception to the rule that complaints do not have to anticipate affirmative defenses to survive a motion to dismiss where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations"); *Tregenza v. Great Am. Comm'ns Co.*, 12 F.3d 717, 718

(7th Cir. 1993) (noting that even though a plaintiff is not required to a negate statute of limitations affirmative defense in his complaint, "if he pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court").

Rule 12(b) requires that a court treat motions to dismiss as one for summary judgment under Rule 56 when "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(b). Despite the language of Rule 12(b), the court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). A court may also consider facts alleged in a pro se plaintiff's brief in opposition to a motion to dismiss when considering the sufficiency of the complaint, as long as the facts are "consistent with the allegations in the complaint." *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015); *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997).

**COMPLAINT ALLEGATIONS**

The Plaintiff alleges that the Parkview Defendants violated Title VI when they denied care and treatment to his mother while she was a patient at Parkview in 2011. He alleges that the care she received was inferior to the care that white patients in similarly circumstances received. (Compl. ¶ 83–84, ECF No. 1.) According to the Plaintiff, these actions resulted in her death on August 23, 2011. (Pl.'s Reply Br. 9, ECF No. 29.) Moreover, he complains that Parkview failed to report to the Indiana State Department of Health that his mother had suffered a fall that led to her death. (Compl. ¶ 87.) The Parkview Defendants "purposefully kept material information

from the Plaintiff because of race before his mother died August 23, 2011" (Pl.'s Reply Br. 10) and continued to deny him access to information concerning his mother's death before he filed a complaint with the Indiana Department of Insurance on June 25, 2013 (*Id.* at 4). On June 25, 2013, the Plaintiff filed a medical malpractice claim in state court. Dissatisfied with rulings there, he alleges that the Parkview Defendant have continued to deny material information to him so that he can advance his claims in state court. (Compl. ¶ 89.)

## STATUTE OF LIMITATIONS

The Parkview Defendants argue that the Plaintiff's Title VI claims are time barred. The Plaintiff, insistent that no statute of limitations applies to Title VI claims, maintains that he is not barred from proceeding with his claims against the Parkview Defendants. The Plaintiff is correct that the statute under which he has sued provides no limitations period—a common occurrence in federal civil law. Prior to 1990, Congress had not adopted a statute of limitations for federal claims. The Supreme Court has said that "[i]n such situations we do not ordinarily assume that Congress intended that there be no time limit on actions at all; rather, our task is to "borrow" the most suitable statute or other rule of timeliness from some other source." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 158 (1983). For example, courts were instructed to borrow the most analogous state statutes of limitations, both for § 1983 claims against state actors, *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483–86, (1980), and for § 1981 claims against private actors, *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462–66 (1975). Later, the Supreme Court clarified that the forum state's personal-injury statute of limitations provided the most analogous statute of limitations. *Goodman v. Lukens Steel Co.*, 482

4

U.S. 656, 660–62 (1987) (§ 1981 claims); *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985) (§ 1983 claims).

On December 1, 1990, Congress adopted a four-year statute of limitations for federal claims. 28 U.S.C. § 1658. However, this applies only to civil actions "arising under an Act of Congress enacted after the date of the enactment of this section." *Id.* The Supreme Court has interpreted § 1658 to apply only "if the plaintiff's claim against the defendant was made possible by a post–1990 enactment," and to leave "in place the 'borrowed' limitations periods for pre-existing causes of action." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004). Title VI was enacted before December 1, 1990. Therefore, the four-year statute of limitations contained in § 1658 does not apply.

The Court finds that the appropriate statute of limitations in Title VI cases is the same statute of limitations that is applied in § 1983 cases and in § 1981 cases that are not governed by § 1658's four-year statute of limitations. Because Title VI is closely analogous to § 1983 and § 1981, both of which have been characterized as personal-injury statutes, the same statute of limitations should apply to Title VI claims. *See Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618 (8th Cir. 1995) (applying the reasoning in *Wilson v. Garcia* to a Title VI claim and holding that the appropriate statute of limitations for a Title VI claim is the state's personal injury statute of limitations); *Taylor v. Regents of Univ. of Cal.*, 993 F.2d 710, 712 (9th Cir. 1993) (holding that claims brought under Title VI "are governed by the same state limitations period applicable to claims brought under § 1983"); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 631 (10th Cir. 1993) (holding that "Title VI claims are best characterized as actions for injury to personal rights" and, therefore, the appropriate statute of limitations is the state's personal injury

statute of limitations); *Rozar v. Mullis*, 85 F.3d 556, 561 (11th Cir. 1996) (holding that the state's personal injury statute of limitations applied to a Title VI claim).

In Indiana, the limitations period for personal injury claims is two years. Ind. Code § 34–11–2–4. Accordingly, all claims that accrued before January 28, 2014, are time-barred. Determining when the Plaintiff's claim accrued, i.e., when the two-year period began to run, is determined by federal law. *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994); *Wilson v. Geisen*, 956 F.2d 738, 740 (7th Cir. 1992). "Generally, a claim accrues when the plaintiff knows or has reason to know of the injury giving rise to the cause of action." *Wilson*, 956 F.2d at 740.

The injuries the Plaintiff complains of are the denial of proper medical care to his mother, leading to her death in August 2011, the failure to properly report her fall, and a refusal to provide him with information surrounding her fall and her death. He claims that these actions were the result of intentional race discrimination and, thus, a violation of his civil rights. In his response brief, the Plaintiff clarified his claims:

> The Plaintiff contends, during the course of Carrie Bell Rogers' stay at Parkview Dexter Rogers was consistently denied services, information related to his mother's declining condition and he was denied specified treatments he requested as POA (Power of Attorney) for his mother before she passed away. Parkview cannot provide a legitimate non-discriminatory reason to the denial of said information.
>
> After Carrie Bell Rogers passed away, and before Rogers filed his complaint with the Indiana Department of Insurance on June 25, 2013, he was denied pertinent information from professionals at Parkview—a denial that confirms and substantiates the rationale for the Plaintiff's Title VI claim.

(Pl.'s Reply Br. 4, ECF No. 29.) Later, he writes that "the violations of his rights commenced on June 26, 2011 when his mother Carrie Bell Rogers fell under dubious circumstances, the medical provider withheld information, provided substandard care, and denied an assortment of services because of race that culminated in Carrie Bell Rogers' death August 23, 2011." (*Id.* at 9.) The

Complaint allegations, as supplemented by the Plaintiff's brief, plainly show that the actions the Plaintiff complains Parkview took in violation of his, or his mother's, rights occurred well over two years before the Plaintiff commenced this federal lawsuit in January 2016.

The Plaintiff asserts that the Defendants' failure to provide information has continued, but a "refusal to undo a discriminatory decision is not a fresh act of discrimination." *Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992). In *Lever*, the Seventh Circuit affirmed the dismissal of a gender discrimination claim by an assistant professor who was denied tenure. In deciding that the plaintiff had not timely filed her complaint with the EEOC, the court determined that the limitation period began with the initial decision not to recommend tenure, not the appeals, review and final upholding of the decision. In ruling that the time period to sue had thus elapsed, the court held that when "a single discriminatory decision is taken, communicated, and later enforced despite pleas to relent—the time starts with the initial decision." *Id.*

The reasoning of *Lever* is applicable here. The refusal to turn over materials cannot be considered a new discriminatory act separate from the initial refusal. It is no benefit to the Plaintiff that the refusal occurred in the course of separate litigation. To the contrary, challenges to the sufficiency of the Defendant's responses to discovery requests in another case should be raised in that proceeding, and do not form the basis of an independent cause of action. *See Tennant v. Wisconsin*, No. 08-C-148, 2008 WL 819394, at *2 (E.D. Wis. Mar. 21, 2008); *Zigmund v. Tetreault*, No. 395CV2213, 1997 WL 695502, *4 (D. Conn. Oct. 10, 1997) (finding "no legal basis upon which to state a claim that the failure to comply with discovery request in another case violated any constitutionally or federally protected right"); *Marozsan v. United States*, 849 F. Supp. 617, 645 (N.D. Ind. 1994) (holding that "[t]here is no recognized civil cause

of action for the failure or refusal of a party to provide discovery").

The Plaintiff's attempt to invoke the concept of equitable tolling is likewise unavailing. He contends that the Defendants have prevented him from asserting his rights, specifically, that they have

> purposefully kept material information from the Plaintiff because of race before his mother died August 23, 2011. The Plaintiff contends, his mother did not receive the same type of services, treatment and medical care while she was a patient at Parkview. The Plaintiff contends Parkview, Packnett and the rest of the Defendants named in this claim have thoroughly violated the Plaintiff's Civil Rights and his rights to due process in depriving the Plaintiff information to litigate his various claims because of his race.

(Pl.'s Reply Br. 10.)

Although federal law determines when a claim accrues, the tolling laws of the state where the injury occurred govern any argument that the statute of limitations was tolled. *See Hardin v. Straub*, 490 U.S. 536, 543 (1989). Under the theory of equitable tolling the Plaintiff advances, fraudulent concealment, he must show that the Defendants have, "either by deception or by violating a duty, concealed from the [P]laintiff material facts thereby preventing the [P]laintiff from discovering a potential cause of action." *City of E. Chi. v. E. Chi. Second Century, Inc.*, 908 N.E.2d 611, 621–22 (Ind. 2009) (quoting *Fager v. Hundt*, 610 N.E.2d 246, 251 (Ind. 1993)). "When this occurs, equity will toll the statute of limitations until the equitable grounds cease to operate as a reason for delay." *Ne. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n, Inc.*, 56 N.E.3d 38, 45 (Ind. Ct. App. 2016).

Here, the Plaintiff's claims concerning the denial of information is, itself, an alleged Title VI violation. He has not been denied information bearing on the existence of that claim; no other knowledge was required for him to pursue the claim. His argument conflates the substantive

8

wrong that he alleges with the equitable doctrine.

The Plaintiff was aware of the intentional discrimination he purportedly suffered long before he decided to pursue matters in this Court. Indiana tolling principles did not prevent the running of the statute of limitations. The Parkview Defendants' Motion to Dismiss is well taken, and will be granted.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Motion to Dismiss of Defendants Parkview Hospital, Inc., and Michael J. Packnett, CEO of Parkview Health [ECF No. 16].

SO ORDERED on March 6, 2017.

    s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT